THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN P. CONERTY, Defendant-Appellant.

Fourth District   No. 5—97—0870

Opinion filed May 15, 1998.—Rehearing denied June 15, 1998.

Asher O. Geisler, of Geisler Law Offices, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a bench trial, defendant was convicted of one count of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(4) (West 1994)) and one count of home invasion (720 ILCS 5/12—11 (West 1994)). He was sentenced to consecutive 10-year terms of imprisonment for each count. Defendant appeals, alleging (1) he was not proved guilty beyond a reasonable doubt; (2) the court erred in not admitting evidence respecting the shoe size of the footprints found at the scene of the crime; and (3) the court erred in imposing a consecutive sentence for home invasion because it constitutes an included offense of aggravated criminal sexual assault.

The victim testified that she had purchased and moved into the residence at 1431 West Decatur Street on June 30, 1994. During the early morning hours of July 29, 1994, she awoke to see the shape of a man standing at the foot of her bed. She described him as at least 6

feet tall, broad shouldered and muscular, like a football player. His hair was relatively short because she could see his neck, and although she could not see his face, she got the impression he was Caucasian. The attacker turned her facedown on the bed, lay on top of her, and penetrated her vagina with his finger. He told her he would not hurt her if she was quiet and that he had a gun. After the attacker left, the victim called the police.

When the police arrived, they determined the man had entered the house through an open kitchen window. A screen that had been in the window was lying on the ground. It had two slits cut into the bottom corners to enable fingers to reach inside and unlatch the screen. At defendant's trial in August 1997, a right and a left thumbprint lifted from the outer bottom edge of the screen were identified as belonging to the defendant.

The victim testified that she could not identify the defendant as the person who was in her house on July 29, 1994, but that she had viewed a lineup and identified the defendant as having the same build, size, and hair consistency as the man whose silhouette she saw the night of the offense. She identified the defendant as the person she had picked out of the lineup.

Tina Lemna testified that she and her husband had lived in the house at 1431 West Decatur Street from December 1990 until nine months before its sale on June 30, 1994. Lemna stated that she had never seen the defendant before and could think of no reason why he would have been at her house when she lived there.

Jeff McGlasson testified that he had known the defendant for approximately 10 years. Although he had never lived at 1431 West Decatur Street, he had frequently visited his friend, Scott Harrison, who had lived there about seven years earlier. McGlasson testified that the defendant lived a few houses down the street from Harrison's residence and could have been at the house when Harrison owned it, but he had no specific memory of the defendant ever being there.

David Dickerson, an officer with the Decatur police department, testified that after he had received a match on the fingerprints in the case, he had interviewed the defendant in August 1996. The defendant was 6 feet 1 inch tall and 220 pounds at the time of the interview. When informed that his fingerprints had been found at the scene, the defendant stated that he had been in the house when his friend Jeff McGlasson lived there three or four years earlier. The defendant denied that he had ever stood outside the kitchen window or been around the window at all. The defendant had no explanation for the presence of his fingerprints on the outside of the kitchen screen. The defendant did not know Tim or Tina Lemna or Scott Harrison.

The State also presented the testimony of Officer Frank Hubbard, Greg Spain, Roger Ryan, David Dickerson, and a Macon County jail correctional officer.

Officer Greg Spain testified for the defendant. He stated that he had attempted to lift electrostatic shoe impressions from the scene and had found one on the counter and two on the linoleum floor. All the impressions were very light. Each of the prints bore a "Nike" impression and one of the prints from the floor measured approximately 10 inches in length. Officer Spain stated that he was not a shoe print comparison expert and the Nike brand was popular. He did not know whether each of the three prints was made from the same shoe.

The defendant also called Brian Raupp, who had been a shoe salesman for 17 years. Raupp stated that a 10-inch foot equated to a size 8 shoe. After measuring defendant's foot, Raupp determined that defendant wore a size 13 shoe, which would be about 11³/₄ inches long, although that measurement would depend upon the construction of the shoe. Raupp admitted that he was not an expert in the identification of shoe prints and that there were hundreds of models of Nike brand shoes.

Defendant's father testified he had lived at 1475 West Decatur Street for 27 years. For most of that time defendant lived with him, except from 1992 to July 1, 1994, when defendant had been discharged from the Navy. He had bought the defendant two pair of size 12 "Etonic" tennis shoes.

Laura Harrison testified that she had formerly lived at 1431 West Decatur Street from 1985 to 1990. She said Jeff McGlasson had been a frequent visitor but she did not know the defendant and had never before seen him.

Defendant then testified that he had never molested the victim or owned a pair of Nike shoes. He said he wore a size 13 shoe. He stated that when he was home on leave from the Navy he went to the house at 1431 West Decatur when it was vacant and looked in the window.

The State objected to the admission of shoe prints and the Etonic shoes based on relevancy. The defendant contended the shoes and prints were relevant because they were found near the assumed point of entry and showed the Nike emblem. The trial court admitted the exhibits for the limited purpose of showing the brand name impression only and not for the purpose of showing the size of the person who wore the shoes. The trial court found the defendant guilty on both counts and he was subsequently sentenced to 10 years' consecutive imprisonment for each offense.

■ The defendant first contends he was not proved guilty beyond

a reasonable doubt. When the defendant brings a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to reweigh the evidence or determine anew the defendant's guilt. Rather, the court's role is limited to determining whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt. *People v. Enis*, 163 Ill. 2d 367, 400, 645 N.E.2d 856, 871 (1994). Defendant contends the fingerprints and a vague description as to build are the only evidence connecting him to the scene of the crime and the fingerprints are insufficient proof of guilt because they do not satisfy the physical and temporal proximity test. We disagree. The physical and temporal proximity criteria are satisfied by proving that fingerprints were found in the immediate proximity of the crime under circumstances that would indicate that they could have been made only at the time of the occurrence. *People v. Gomez*, 215 Ill. App. 3d 208, 216, 574 N.E.2d 822, 827 (1991). Defendant's contention that his fingerprints could have been placed on the screen sometime before the offense or when the screen was not on the window is belied by his pretrial statement that he had never stood outside the kitchen window, the absence of any evidence he had prior contact with the screen, and the testimony of former owners of the residence that they did not know the defendant and had never seen him before. Defendant's two thumbprints were found beneath the two slits cut into the screen to allow its removal, and defendant could supply no explanation for their presence. See *People v. Woods*, 225 Ill. App. 3d 988, 994-95, 588 N.E.2d 1224, 1228 (1992) (fingerprint found on broken glass immediately outside window affording access to burglarized dwelling was sufficient to convict despite the fact the defendant lived in the neighborhood and had been seen near the dwelling several days prior to the burglary). The evidence was sufficient to enable a rational trier of fact to find defendant's guilt proved beyond a reasonable doubt.

■ Defendant next contends the court erred in not allowing "evidence of the footprints found at the scene of the crime and the evidence of the shoe size that would produce the footprints found at the scene of the crime." In reviewing the record, it is unclear of what excluded evidence defendant complains. Officer Spain testified that one of the prints found on the victim's floor measured 10 inches. Raupp testified that a 10-inch foot would equate to a size 8 shoe and that defendant wore a size 13 shoe. The court accepted defendant's argument that the prints were relevant to show the location of the Nike brand impression. All evidence defendant requested was admitted and defendant's counsel argued the inferences to be drawn from

the evidence. In any event, the admissibility of evidence is left to the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of discretion. *People v. Eyler*, 133 Ill. 2d 173, 211-12, 549 N.E.2d 268, 285 (1989) (expert testimony). No abuse of discretion occurred here.

■ Defendant last contends the court erred in sentencing him to a consecutive 10-year term of imprisonment on the home invasion conviction because that offense was an included offense of aggravated criminal sexual assault. We agree.

Section 2—9 of the Criminal Code of 1961 defines an included offense as an offense which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 1994). In Illinois, the test for determining whether a particular offense is an included offense of another is the charging instrument approach. *People v. Novak*, 163 Ill. 2d 93, 112, 643 N.E.2d 762, 772 (1994). This approach looks to the facts alleged in the charging instrument, and an offense is deemed to be an included offense if it is described by the charging instrument. *Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 770.

In this case, count I of the information charged that defendant committed the offense of home invasion by entering the dwelling of the victim, knowing her to be present, and intentionally causing injury to the victim in that by the use of force he knowingly committed an act of sexual penetration upon the victim by placing his finger in her vagina and getting on top of her. See 720 ILCS 5/12—11(a)(2) (West 1994). Count II of the information charged that defendant committed the offense of aggravated criminal sexual assault in that during commission of home invasion, he knowingly committed an act of sexual penetration upon the victim in that by the use of force he placed his finger in her vagina. See 720 ILCS 5/12—14(a)(4) (West 1994).

In *People v. Rodriguez*, 267 Ill. App. 3d 942, 952-53, 641 N.E.2d 939, 947-48 (1994), the appellate court vacated the defendant's conviction and sentence for home invasion based on its assumption that home invasion was the aggravating factor supporting the defendant's conviction for aggravated criminal sexual assault. Upon review, the supreme court reversed the appellate court's vacation of the home invasion conviction finding it not to be a lesser included offense of aggravated criminal sexual assault. *People v. Rodriguez*, 169 Ill. 2d 183, 190-91, 661 N.E.2d 305, 308-09 (1996). That court noted that the indictment contained eight counts of aggravated criminal sexual assault—four based on defendant displaying or threatening to use a

dangerous weapon, and four based on commission of the assault during a home invasion. The home invasion count was based on the defendant's threat or use of force while armed with a dangerous weapon. Since the jury returned a general verdict of guilty, the effect was that the defendant was guilty as charged in each count to which the proof was applicable, and the defendant was as equally guilty of aggravated criminal sexual assault based on his display or threat to use a gun as based on his committing the assault during a home invasion. The supreme court stated it assumed that the general verdict of guilty of aggravated criminal sexual assault was based on defendant's display or threat to use a gun. *Rodriguez*, 169 Ill. 2d at 189-90, 661 N.E.2d at 308.

In this case there are no multiple indictments alleging the commission of aggravated criminal sexual assault by more than one aggravating factor. Rather, the felony of home invasion is the sole aggravating factor charged in the information. Moreover, the basis of the home invasion count is the intentional infliction of injury by means of digital sexual penetration, the same element alleged for aggravated criminal sexual assault. We are required to adopt the reasoning of *Rodriquez*. Therefore, as charged in the information, home invasion is an included offense of aggravated criminal sexual assault because every element necessary to prove home invasion is included in the charged offense of aggravated criminal sexual assault.

Accordingly, we affirm defendant's conviction and sentence for aggravated criminal sexual assault and vacate the conviction and sentence for home invasion.

Affirmed in part; vacated in part.

KNECHT and COOK, JJ., concur.