(No. 71383.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHRISTOPHER D. KEITH, Appellee.

*Opinion filed April 16, 1992.*

Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Rita Kennedy Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Peter A. Carusona, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The defendant, Christopher Keith, was indicted on one count of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)), one count of driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(d)(3)), and one count of driving with a blood-alcohol concentration of 0.10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). Prior to trial, defendant filed a motion *in limine* seeking to bar the admission into evidence of a breath-alcohol test. The trial court granted defendant's motion. The State appealed the trial court's decision pursuant to our Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), and the appellate court affirmed (206 Ill. App. 3d 414). We allowed the State's petition for leave to appeal pursuant to our Rule 315 (134 Ill. 2d R. 315).

At the hearing on defendant's motion *in limine*, the State and defendant stipulated to the following facts: (1) on April 22, 1989, the defendant was arrested for the offense of driving while under the influence of alcohol and transported to the Pekin police department (police department); (2) Officer Eddie Thomas administered a breath-alcohol test to defendant; (3) Thomas is now deceased; (4) at the time Thomas gave defendant the breath-alcohol test, Thomas' license to conduct such tests had expired; and (5) the State sought to introduce the breath-alcohol test results at trial. The Department of

Public Health (Department) standards for breath-alcohol tests were admitted into evidence.

Testifying at the hearing was Lieutenant Don Nell of the police department. Nell was shift commander of the patrol division April 22, 1989, and was in charge of breathalyzer operations. As shift commander, Nell reviewed each completed breath test. Nell identified a copy of the police department's breath analysis logbook which contained the names of individuals arrested for DUI, dates of the arrests, results if a breath test was performed, and the dates the breath test instrument was examined and certified to be in proper working order.

Harold Backer, a breath analyzer inspector with the Department, also testified. Backer's duties for the Department included training and licensing police to become breath test operators, and certifying breathalyzer instruments. Breath test training consists of a 37-hour course in blood-alcohol content in which the trainee studies case law, standard procedures, and instrument theory, and runs approximately 100 tests on a breath test instrument. Once licensed, the operator must be relicensed every year. This process involves running two practice tests for Backer after the first year, and taking a 25-question quiz the next. These two tests alternate every year.

Backer was familiar with the certification and license of Thomas and had recently tested him for license renewal on May 2, 1989. Thomas' renewal test involved operating a breath-alcohol test simulator. According to Backer, Thomas had no problems passing the test. Backer identified Thomas' license, which was valid from May 2, 1989, through May 2, 1990. Thomas' previous license had expired April 21, 1989. Thomas had been licensed since 1983.

The police department's breath test machine is the Intoxilyzer model 4011AS, a model approved by the De-

partment. (Although Backer testified at the hearing that the model was the "4—11AS," we believe this to be a misstatement or an error in the transcript. The Department has no model "4—11AS" on its approved instrument list, but does approve of Intoxilyzer models 4011, 4011A, 4011AS, 4011ASA, and 5000. Moreover, the police department's breath analysis logbook identifies the instrument as the Intoxilyzer model 4011AS, and the ticket on which the test results are printed is a ticket for "4011 MODELS.") The tests Backer conducts to assure the instrument is properly calibrated are performed once a month, not to exceed a period of 45 days, and the results are recorded in the logbook. Backer tested and found the police department's breath machine properly calibrated on April 4, 1989, and again on May 2, 1989.

Backer next described the operation of the breath machine. The operator must first conduct a sample test called an airblank test. If the operator fails to conduct an airblank test, the machine will not print an airblank result. If the machine prints "A.00" on the ticket, "A" indicating airblank and ".00" indicating the alcohol concentration, as it did here, the machine is not contaminated. The operator next purges the air chamber, which also ensures the machine is clear of contamination. The machine is purged by switching on the "air blank" mode, which blows air through the machine for 35 seconds. After 35 seconds, a light indicates the cycle is completed, and the operator switches the machine to breath test mode. If the air chamber is not purged, the machine will not print results of a breath test. The individual then blows into the machine for 8 to 10 seconds so that 600 cubic centimeters of air is blown into the machine. If the individual fails to blow 600 cubic centimeters of air into the chamber, the machine will not produce a printout. The air blown into the machine flows through a sample chamber to infrared absorption which absorbs the alcohol

in the sample chamber. A digital display reveals the alcohol concentration in the breath, and the machine prints the number on the ticket. In the instant case, the machine printed "B.18," "B" for breath and ".18" for alcohol concentration. The operator should make sure the visual readout matches the printed readout.

Daniel Smith of the police department was the arresting officer in the case and brought defendant to the stationhouse. Smith testified that he asked Thomas to prepare the breath-alcohol machine for a test. Although Smith was not certified to operate the breath machine, he had been previously certified in another jurisdiction. Smith did not observe Thomas prepare the machine and was not sure how Thomas prepared it. After Thomas indicated the machine was ready, Smith asked defendant to accompany him to the machine. Smith observed Thomas place the mouthpiece in the tube which protrudes from the machine. Smith also observed defendant blow into the machine. After the machine indicated the test was complete, a test result, ".18," flashed on the visual display. The machine then printed the ".18" result on the ticket.

Smith continuously observed defendant for 34 minutes from the time of his arrest until he took the breath test. During this time defendant did not ingest anything, smoke, or regurgitate.

After the defendant's breathalyzer test, Smith saw Thomas record the results in the logbook. Smith also saw Thomas sign the printout and write the information on the printout identifying it as defendant's. Smith could not testify that he saw Thomas write every letter on the printout.

The trial court barred the State from introducing the results of the breath test into evidence because Thomas was uncertified and deceased. The trial court also denied the State's motion for reconsideration, but clarified its

order by finding that only one set of standards govern the admissibility of a breath-alcohol test, the Department's standards. The Department's standards require an operator of a breath test instrument to be licensed by the Department, something the State could not prove. The State then filed a certificate of impairment pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)) and filed an appeal. The appellate court affirmed the trial court by finding that the State could not provide the foundation for the admissibility of the breath test. The appellate court also relied on the Department's standards.

The State appeals and contends that the trial and appellate courts erred in barring results of defendant's breath test into evidence on the reckless homicide charge. However, we first address defendant's request to dismiss this appeal. Defendant argues that while Supreme Court Rule 604(a)(1) allows the State to appeal a pretrial suppression order which substantially impairs its ability to prosecute its case (*People v. Young* (1984), 82 Ill. 2d 234), it does not allow the State to appeal from every ruling excluding evidence (*People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 368; *People v. McCollins* (1984), 126 Ill. App. 3d 1083, 1085). Defendant notes that its motion was a motion *in limine*, and such motions usually involve evidentiary matters (*People v. Flatt* (1980), 82 Ill. 2d 250, 266). Defendant concludes that the State has appealed from an evidentiary ruling, not a suppression order, and that we should thus dismiss this appeal.

Rule 604(a)(1) provides in pertinent part: "In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." (134 Ill. 2d R. 604(a)(1).) In *Young*, we held that "Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order when-

ever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case." (*Young*, 82 Ill. 2d at 247.) The issue before us is whether or not the trial court's order *suppressed* evidence. (See *People v. Phipps* (1980), 83 Ill. 2d 87, 90.) Although *in limine* motions usually involve evidentiary matters (*Flatt*, 82 Ill. 2d at 266), the substantive effect of the court's order, not the label of the motion, controls appealability under Rule 604(a)(1). *Phipps*, 83 Ill. 2d at 90-91.

The trial court's order had the substantive effect of suppressing evidence. The order prevented the breath test results from being admitted into evidence. The State should not be denied an appeal simply because a defendant decides to label his motion *"in limine"* rather than "to suppress evidence." The trial court was aware of this and told defendant he could have filed a motion to suppress instead of the motion *in limine*.

Defendant also argues that the State failed to show the suppression of evidence would substantially impair its case. Even though the State filed a certificate of substantial impairment, defendant argues the suppression of the breath test results would not substantially impair the State's ability to prosecute its case. Defendant relies on the trial court's statement that because witnesses were available to testify defendant was intoxicated at the time of his arrest, the results of the breath test were "not either essential or primary evidence for the prosecution of the charge."

In *Young*, this court stated:

"Our intention in requiring this certification is not to formulate a standard by which courts may determine the appealability of a particular order. *** [T]hat would indeed be a heavy burden, one which we do not believe justified by the marginal diminution in the number of appeals which we anticipate such a procedure would produce. In-

stead we rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case." (*Young*, 82 Ill. 2d at 247.)

We thus rely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case and hold that this appeal is properly before this court.

We now address the State's contention that the trial court erred in suppressing the results of the breath test in the reckless homicide prosecution. The State believes that in a prosecution for reckless homicide, section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2), which incorporates the Department's standards relating to breathalyzer instruments, does not apply as in a DUI prosecution. Instead, the State argues, the admissibility of breath-alcohol tests in a prosecution for reckless homicide is governed by the usual standards of admissibility. (*People v. Murphy* (1985), 108 Ill. 2d 228.) The State believes it provided an adequate foundation under the usual standards of admissibility for the admission of the breath test results.

Section 11—501.2 of the Illinois Vehicle Code states:

"Chemical and other tests. (a) Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501 [which defines the offense of 'driving while under the influence of alcohol, other drug or combination thereof'] or a similar local ordinance, evidence of the concentration of alcohol, other drug or combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police by an individual possessing a

valid permit issued by that Department for this purpose."
Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2.

In *People v. Murphy* (1985), 108 Ill. 2d 228, this court held that compliance with section 11—501.2 standards was not mandatory to admit a blood-alcohol analysis in a prosecution for reckless homicide. We must now decide whether our decision in *Murphy* applies to a breath-alcohol analysis as well. We conclude that it does.

Section 11—501.2 standards apply only to actions or proceedings arising out of arrest for an offense as defined in section 11—501. Reckless homicide is not such an offense. (*People v. Hamilton* (1987), 118 Ill. 2d 153, 161; *Murphy*, 108 Ill. 2d at 233.) Moreover, nothing in the reckless homicide statute indicates that section 11—501.2 standards apply to prosecutions under it. (*Hamilton*, 118 Ill. 2d at 161; see Ill. Rev. Stat. 1987, ch. 38, par. 9—3.) We thus hold that the usual standards governing the admission of evidence apply to breath-alcohol test results in prosecutions for reckless homicide.

Defendant argues, however, and the trial court found, that only one set of standards for admitting breath tests exists, the Department's standards. Thus, even though section 11—501.2 is not applicable to prosecutions for reckless homicide, the Department's standards must be used because they are the only ones available. Defendant further argues, and the appellate court agreed, that this court set out the elements of a proper foundation to admit breath test results in a reckless homicide prosecution in *People v. Orth* (1988), 124 Ill. 2d 326. The foundation set forth in *Orth* was based on the Department's standards:

"(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a

model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist. [Citations.]" *Orth*, 124 Ill. 2d at 340.

The appellate court was mistaken in its belief that the foundation provided in *Orth* applies to prosecutions for reckless homicide. *Orth* involved a proceeding to rescind a summary suspension of a driver's license. As this court stated in *Orth*: "[I]t can hardly be denied that a proceeding to rescind a summary suspension is a proceeding arising out of an arrest for an offense as defined in section 11—501." (*Orth*, 124 Ill. 2d at 340.) As such, the requirements of section 11—501.2, including the Department's standards, were mandatory before breath test results could be admitted. A prosecution for reckless homicide does not arise out of an offense defined in section 11—501, and *Orth* and the Department's standards are not applicable here.

We also disagree that the Department's standards are the only ones which address the admissibility of a breath-alcohol test. The Department and Superintendent of State Highway Police adopted standards for alcohol tests effective September 1, 1970. (*People v. Clifton* (1973), 11 Ill. App. 3d 112, 114.) Prior to these standards, breath-alcohol tests were admitted under the usual standards governing admissibility of evidence. In *People v. Krueger* (1968), 99 Ill. App. 2d 431, the appellate court noted that Illinois courts had not yet laid any specific foundation requirements for admitting breath test results into evidence. (*Krueger*, 99 Ill. App. 2d at 440.) The *Krueger* court admitted a breath test result into evidence where the officer performing the test had taken a

44-hour course at the Chicago Police Academy; had a certificate from Indiana University as a certified breathalyzer officer; explained the operation of the machine in court; and stated the results of the defendant's test. (*Krueger*, 99 Ill. App. 2d at 441.) The officer also testified that the machine was in proper working order, and the record showed no evidence to the contrary. (*Krueger*, 99 Ill. App. 2d at 441.) Moreover, the officer was subject to cross-examination at length concerning his knowledge of the machine's operation. (*Krueger*, 99 Ill. App. 2d at 441.) Thus, the trial court was satisfied that the machine was properly calibrated and maintained, the officer had the proper knowledge to operate the machine, and the officer properly performed and observed the test. See also *People v. Harges* (1967), 87 Ill. App. 2d 376; *People v. Bobczyk* (1951), 343 Ill. App. 504.

The State contends that it provided a proper foundation through the testimony of Nell, Backer, and Smith. The evidence admitted at the hearing included Thomas' training; the number of years Thomas was certified to conduct breath tests; a general description of how the machine is operated; an examination of the breath test printout; Smith's observation of defendant for at least 20 minutes prior to the breath test; Smith's observation of the visual display and the matching result on the printed sheet; and the machine's certification to be in proper working order. There is, however, no evidence that Thomas properly performed the test or that he had the requisite knowledge to perform an accurate test at that time. Without this evidence, the State cannot lay the proper foundation for the admission of the breath test results in the prosecution for reckless homicide.

While Backer's testimony suggests that Thomas followed the correct procedure to produce a printout, Backer's testimony does not show that Thomas properly performed the test to produce an accurate result. The

proper operation of the Intoxilyzer model 4011AS consists of more than Backer testified to at the hearing, such as ensuring the machine is at the proper operating temperature, and turning the "zero adjust" to "000" at the required three stages during preparation prior to the actual test. (See *State v. Smith* (1984), 312 N.C. 361, 323 S.E.2d 316 (for a list of steps required to operate the Intoxilyzer model 4011AS).) Also, while Backer testified that Thomas was licensed prior to the test and was relicensed 10 days after the test, there is no testimony concerning Thomas' knowledge during the test. As this court stated in *Murphy*, the certificate of a breath test operator protects an accused by ensuring that the results of testing required by law enforcement officers will be reliable. (*Murphy*, 108 Ill. 2d at 234.) Without a license, there must be sufficient proof that the operator was knowledgeable and the test performed was reliable. Such proof is not available here due to Thomas' death and the fact that no other person trained in breath-alcohol testing observed the entire test. Smith's testimony cannot cure these deficiencies because he admitted not knowing what Thomas did to prepare the machine. Smith also had never been licensed to perform breath tests with the police department.

In concluding this, we note that these machines are not foolproof, and require not only the correct use to obtain an accurate result, but also a knowledgeable operator to observe the test. The Intoxilyzer model 4011AS, for example, is affected by voltage drops and radio waves. While some models have indicators built in to detect these two problems, the model 4011AS does not. See Sapir, Giangrande & Peters, *Breath Alcohol Machines: Evidence Foundation Requirements in Illinois*, 22 J. Marshall L. Rev. 1, 17 (1988); J. Tarantino, Defending Drunk Drivers §632, at 6—28 through 6—30 (2d ed. 1991).

We therefore disagree with the trial and appellate courts on the use of the Department's standards for breath-alcohol tests in a prosecution for reckless homicide, but agree with the result reached by each court, the suppression of the breath test. Because we resolve this appeal in the foregoing manner, we need not address the State's additional contentions, which rest upon a proper foundation for the breath test results.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*