THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES C. DRUM, Defendant-Appellee.

Fourth District    No. 4—98—0803

Argued September 23, 1999.—Opinion filed September 28, 1999.

C. Steve Ferguson (argued), State's Attorney, of Charleston, for the People.

Charles M. Schiedel and Stephen R. Ryan (argued), both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1997, the State charged defendant, Charles C. Drum, with first degree murder (720 ILCS 5/9—1(a)(1) (West 1996)). In September 1998, the trial court denied the State's pretrial motion under section 115—10.2 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.2 (West 1998)) to admit certain hearsay statements at defendant's trial, and the State brings this interlocutory appeal from that order (145 Ill. 2d R. 604(a)(1)). Because we lack jurisdiction to hear this appeal, we dismiss.

## I. BACKGROUND

In January 1997, the State filed first degree murder charges against defendant, his brother, Thomas Drum, and their friend, Marcus Douglas, alleging that the three men had killed a man named Shane Ellison. Thomas and Marcus were tried separately in August 1997 and February 1998, respectively. Each testified in his own defense and acknowledged that they were involved in Ellison's death. However, they each attempted to characterize their involvement as minimal and claimed that defendant was the primary aggressor. Marcus testified in Thomas' trial but Thomas refused to testify in Marcus' trial. Juries convicted both men of first degree murder.

In April and May 1998, the State filed two pretrial motions in defendant's case, entitled "Motion For Admission of Tom Drum's Testimony at the Trial of Charles Drum" and "Motion for the Admission of Marcus Douglas' Testimony at the Trial of Charles Drum," in which the State asked the trial court to find that Thomas' and Marcus' prior testimony met the requirements for the new statutory residual hearsay exception contained in section 115—10.2 of the Code (725 ILCS 5/115—10.2 (West 1998)). In September 1998, the court conducted a hearing on the State's motions and denied them, finding that Thomas' and Marcus' testimony lacked sufficient trustworthiness to be admissible under section 115—10.2. The State filed a notice of appeal, and defendant has moved to dismiss this appeal.

## II. APPELLATE JURISDICTION UNDER SUPREME COURT RULE 604(a)(1)

The State contends that we have jurisdiction pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). We disagree and instead hold that when (1) the State files a motion *in limine* that seeks the admission of evidence and (2) the trial court enters a discretionary ruling—that is, a ruling that we would normally review deferentially—denying that motion, then (3) Rule 604(a)(1) does not confer jurisdiction on this court to hear an interlocutory appeal of that ruling. As the following discussion illustrates, the interplay between (a) the availability of interlocutory review under Rule 604(a)(1), (b) motions *in limine,* and (c) the nature and scope of deferential review compels our conclusion.

### A. The Availability of Interlocutory Review under Supreme Court Rule 604(a)(1)

■ The State's ability to appeal in a criminal case is restricted to those situations described in Rule 604(a)(1). *People v. Truitt,* 175 Ill. 2d 148, 151, 676 N.E.2d 665, 667 (1997). That rule provides, in pertinent part, as follows: "In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." 145 Ill. 2d R. 604(a)(1).

Originally, Rule 604(a)(1) conferred appellate jurisdiction to review only trial court orders suppressing illegally obtained evidence. See *People v. Van De Rostyne,* 63 Ill. 2d 364, 366, 349 N.E.2d 16, 18 (1976). However, in 1980, the supreme court rejected that restrictive view of appellate jurisdiction, citing concerns that too many important legal questions were going unaddressed. *People v. Young,* 82 Ill. 2d 234, 244-45, 412 N.E.2d 501, 506 (1980). The court explained its decision as follows:

"Although the need for interlocutory review may be the most

pressing in regard to search-and-seizure and involuntary-confession cases, due to the frequency with which those cases arise and the need of law-enforcement agencies for reliable guidelines, similar considerations also indicate the value of allowing interlocutory review of orders suppressing otherwise probative and admissible · evidence. In some instances when trial courts erroneously interpret constitutional or statutory provisions to require the suppression of evidence, those rulings will affect the development of police practices. [Citation.] More importantly and more frequently, however, erroneous exclusionary rulings frustrate the primary purpose of the trial: to ascertain the truth of the charges. Social policies embodied in statutory or constitutional provisions may justify encumbering the fact-ascertaining process, but *the exclusion of otherwise probative and admissible evidence based solely upon an incorrect interpretation of those provisions serves neither the policy represented by the provision nor the public's interest in an accurate resolution of the factual questions involved in the litigation.* Permitting such decisions to escape review encourages their proliferation and denies trial courts desirable guidance." (Emphasis added.) *Young*, 82 Ill. 2d at 245-46, 412 N.E.2d at 506-07.

*Young* unequivocally struck down the restrictive rule previously in place under *Van De Rostyne*, but the supreme court did not have occasion in *Young* to discuss what limits, if any, remained on the State's ability to obtain interlocutory review. The emphasized passage above nevertheless suggests that the supreme court did not intend to create unlimited appellate jurisdiction to hear the State's interlocutory appeals from the sort of discretionary rulings that a trial court traditionally makes in determining whether evidence is "otherwise probative and admissible." Instead, the supreme court in *Young* focused on the need to review trial court rulings, whether pursuant to statute or constitutional provision, that exclude evidence for reasons other than its evidentiary value. In other words, a distinction exists between traditional, discretionary rulings relating to the evidentiary value of proffered evidence on one hand and suppression of evidence in the furtherance of some social policy on the other hand.

### B. Motions *In Limine*

■ In *People v. Owen*, 299 Ill. App. 3d 818, 822, 701 N.E.2d 1174, 1178 (1998), this court noted that although motions *in limine* are most frequently used to bar or limit evidence, they may also be used by the proponent of the evidence, such as the State in this case, to obtain a pretrial ruling that evidence will be admitted at the appropriate point in trial. Thus, although the State in this case styled its pretrial evidentiary motions as motions "for admission of *** testimony,"

they clearly were motions *in limine* in both purpose and effect (see Black's Law Dictionary 1033 (7th ed. 1999)).

■ Regardless of how they are used, motions *in limine* always ask a trial court to make a trial ruling outside the normal trial context. *McMath v. Katholi*, 304 Ill. App. 3d 369, 376, 711 N.E.2d 1135, 1140 (1999); *Owen*, 299 Ill. App. 3d at 822-24, 701 N.E.2d at 1177-79. A trial court considering a party's motion *in limine* therefore must rely upon counsel's representations or offers of proof to determine what the context for the evidentiary ruling will likely be at trial. *Owen*, 299 Ill. App. 3d at 823, 701 N.E.2d at 1178. For that reason, a trial court has discretion not to address a motion *in limine* at all and may instead wait for the evidentiary issue to arise in the normal course of trial. *Owen*, 299 Ill. App. 3d at 823, 701 N.E.2d at 1178. Conversely, when the court does address a motion *in limine* on the merits, its ruling is always subject to reconsideration during trial. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502, 645 N.E.2d 896, 898 (1994); *McMath*, 304 Ill. App. 3d at 375, 711 N.E.2d at 1140. In either case, the court's final ruling takes place at trial, not before.

(We recognize that in *People v. Williams*, 161 Ill. 2d 1, 34, 641 N.E.2d 296, 310 (1994), our supreme court, relying on its earlier decision in *People v. Spates*, 77 Ill. 2d 193, 198-200, 395 N.E.2d 563, 566 (1979), held that a defendant may rely upon a trial court's *in limine* ruling as final when the ruling denies the defendant's motion to exclude his prior convictions. However, those cases address a unique situation and their holdings do not affect the general character of *in limine* rulings. The court in *Spates* expressly limited its holding to "the precise facts presented [t]herein." *Spates*, 77 Ill. 2d at 200, 395 N.E.2d at 566.)

When a trial court addresses a motion *in limine* that seeks to admit evidence rather than exclude it, events at trial may very well cause the court to reconsider its preliminary ruling. For example, even if the court grants a motion *in limine* to admit evidence, the proponent must still lay the proper foundation at trial or the evidence will not be admitted. If, on the other hand, the court denies the motion, the party opposing the evidence may nevertheless "open the door" at trial to its admission. Events at trial can also affect the court's initial understanding of the probative value of the evidence, the risk of unfair prejudice to the party opposing the evidence, or its trustworthiness. As the supreme court wrote in *People v. Childress*, 158 Ill. 2d 275, 296, 633 N.E.2d 635, 644 (1994), "The decision whether to admit evidence cannot be made in isolation. The trial judge must consider a number of circumstances that bear on that issue, including questions of remoteness and prejudice."

Good reasons exist to hesitate before reviewing *in limine* rulings in an interlocutory setting. Interlocutory review delays a trial on the merits and consumes judicial resources. Moreover, the reviewing court must rely on the same undeveloped record and limited information that was before the trial court when it made its preliminary ruling. Nevertheless, once the reviewing court issues its mandate, the trial court must treat it as just that—a mandate and not merely an advisory ruling. After remand, the trial court will likely avoid revisiting the evidentiary question even if circumstances arise at trial that call into question the wisdom of the initial determination. As a result, the flexibility of the *in limine* procedure and the fairness of the trial could both be harmed.

## C. The Nature and Scope of Deferential Review

■ As a general rule, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion, and reviewing courts consider such evidentiary rulings only to determine whether an abuse of discretion occurred. *People v. Jackson*, 182 Ill. 2d 30, 78-79, 695 N.E.2d 391, 415 (1998); *People v. Conerty*, 296 Ill. App. 3d 459, 464, 695 N.E.2d 898, 901 (1998); *People v. Hawkins*, 296 Ill. App. 3d 830, 835, 696 N.E.2d 16, 20 (1998). For example, reviewing courts apply an abuse-of-discretion standard of review to a trial court's determination of the following: (1) whether proffered evidence is more prejudicial than probative (*People v. Buss*, 187 Ill. 2d 144, 219 (1999); (2) whether the nature and scope of cross-examination exceeded the scope of direct examination (*People v. Terrell*, 185 Ill. 2d 467, 498, 708 N.E.2d 309, 324 (1998)); (3) whether a child witness' out-of-court statement exhibits sufficient indicia of trustworthiness to meet the applicable statutory hearsay exception (725 ILCS 5/115—10 (West 1998); *People v. Simpkins*, 297 Ill. App. 3d 668, 676, 697 N.E.2d 302, 307 (1998)); (4) whether to allow the State in a criminal case to present evidence of the defendant's prior convictions (*People v. Holloman*, 304 Ill. App. 3d 177, 181, 709 N.E.2d 969, 972 (1999)); and (5) whether a computer-generated business record is made under circumstances sufficiently trustworthy to qualify for a hearsay exception (*People v. Lombardi*, 305 Ill. App. 3d 33, 42, 711 N.E.2d 426, 433 (1999)).

All of these situations require the trial court to make what we colloquially refer to as a "judgment call," meaning that reasonable minds may differ over what is the correct result. This concept underlies a reviewing court's responsibility not to substitute its own judgment for that of the trial court. "The hallmark of deferential review is that although the reviewing court might have viewed the matter differently, it lacks the authority to change the result on appeal." *People v. Coleman*, 183 Ill. 2d 366, 388, 701 N.E.2d 1063, 1075 (1998).

Two conclusions, relevant here, follow directly from the character of deferential review. First, if a reviewing court conducting deferential review affirms one trial court's judgment, another trial court, faced with the same set of facts, could reach the opposite result and still be affirmed. Second, if a reviewing court conducting deferential review reverses a trial court's judgment, the reversal will usually depend on the specific circumstances of the particular case and will not usually set forth a broadly applicable rule. Another trial court, faced with similar facts, may reach the opposite result and still be affirmed. See generally *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996) (discussing concept of deferential review).

Thus, although appellate review of a discretionary trial court ruling provides guidance to future trial courts and litigants, that guidance is limited by the very nature of deferential review. Accordingly, the need for a reviewing court to assume jurisdiction over a case still pending in the trial court is hardly compelling when the question on review is whether the trial court abused its discretion.

### D. *De Novo* Review of Evidentiary Rulings

■ Reviewing courts sometimes state, as a blanket rule, that *all* evidentiary rulings are reviewed deferentially. See, *e.g.*, *Hilgenberg v. Kazan*, 305 Ill. App. 3d 197, 204, 711 N.E.2d 1160, 1165 (1999) ("[T]he admissibility of evidence is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent a clear abuse of discretion"). However, as the *Childress* court correctly stated, the abuse-of-discretion standard is only a *general* rule (*Childress*, 158 Ill. 2d at 296, 633 N.E.2d at 644), and important exceptions exist. Statutes and common-law principles governing the admission of evidence often involve a combination of purely legal requirements and discretionary decisions.

For example, section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1998)) creates a statutory hearsay exception for prior inconsistent statements of a witness in a criminal case under certain circumstances. Section 115—10.1 provides a prior inconsistent statement is not made inadmissible by the hearsay rule if (1) the statement is inconsistent with the witness' testimony at trial; (2) the witness is subject to cross-examination concerning the statement; (3) the statement describes an event of which the witness had personal knowledge; and (4) the statement is proved to have been accurately recorded. 725 ILCS 5/115—10.1 (West 1998). The question of whether the out-of-court statement was inconsistent with the witness' in-court testimony depends on the trial context in which the statement is offered. A trial court's finding in this regard is reviewed deferentially, as is the trial

court's determination that the statement describes an event of which the witness had personal knowledge. *People v. Barker*, 298 Ill. App. 3d 751, 758, 699 N.E.2d 1039, 1043-44 (1998). However, questions of whether the statement was recorded within the meaning of the statute, or whether the witness is subject to cross-examination, do not involve trial court discretion and accordingly are reviewed *de novo.* See *People v. Kinsloe*, 281 Ill. App. 3d 799, 807-08, 666 N.E.2d 872, 877 (1996) (construing the statute; giving no deference to trial court).

Another example of an evidentiary ruling reviewed *de novo* is found in *People v. Keith*, 148 Ill. 2d 32, 37-38, 591 N.E.2d 449, 451 (1992), where the trial court ruled that section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95¹/₂, par. 11—501.2) required the State to demonstrate, as part of its foundation for admitting breathalyzer test results in a reckless homicide prosecution, that its breathalyzer operator complied with all applicable Illinois Department of Public Health regulations. The supreme court first concluded that it had jurisdiction over the appeal pursuant to Rule 604(a)(1), then held that the trial court had misconstrued the statute. *Keith*, 148 Ill. 2d at 41, 591 N.E.2d at 453.

*Keith* exemplifies the reasons the supreme court in *Young* expanded jurisdiction to hear interlocutory appeals to include more than orders suppressing illegally obtained evidence. In *Keith*, the trial court did not exclude the evidence because of a deficiency in its inherent evidentiary value. Instead, the trial court excluded the evidence on a perceived public policy against its admission. The supreme court disagreed with the trial court's statutory construction but nevertheless affirmed upon concluding that the death of a key witness rendered the State unable to prove a sufficient foundation for admissibility. *Keith*, 148 Ill. 2d at 45, 591 N.E.2d at 455.

In *People v. Ward*, 207 Ill. App. 3d 365, 368, 565 N.E.2d 740, 742 (1991), a case the State relies upon, the *defendant* moved *in limine* to exclude certain hearsay statements, and the trial court granted the defendant's motion based on its interpretation of the applicable statute. The State sought interlocutory review, and the appellate court denied the defendant's motion to dismiss for lack of jurisdiction, citing *Young* and noting that the appeal presented an issue "of first impression, involving a question of statutory interpretation." *Ward*, 207 Ill. App. 3d at 369, 565 N.E.2d at 742.

These cases demonstrate that not all evidentiary decisions involve trial court discretion; some are reviewed *de novo.* They also provide examples of a trend among reviewing courts to accept jurisdiction over interlocutory State appeals when (1) the trial court order appealed from involves the *defendant's* motion seeking the exclusion of evi-

dence rather than the State's motion to admit evidence; and (2) the issue on review involves a question to be considered *de novo*.

### E. The Standard of Review In This Case

■ In this case, the State—and not defendant—filed a motion *in limine*, in which it sought to admit hearsay testimony pursuant to the residual hearsay exception contained in section 115—10.2 of the Code (725 ILCS 5/115—10.2 (West 1998)). That section provides, in relevant part, as follows:

"(a) A statement not specifically covered by any other hearsay exception[,] *but having equivalent circumstantial guarantees of trustworthiness*, is not excluded by the hearsay rule if the declarant is unavailable \*\*\*.

\* \* \*

(c) Unavailability as a witness is limited to the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." (Emphasis added.) 725 ILCS 5/115—10.2(a), (c) (West 1998).

Section 115—10.2 places various procedural burdens on the proponent of the hearsay testimony sought to be introduced. Some of those burdens, such as whether the declarant has been ordered by the court to testify, present questions of law and, in an appropriate case, could give rise to issues of statutory construction similar to the issues presented in *Keith* and *Ward*. However, the statute requires that the hallmark of the trial court's focus be the trustworthiness of the hearsay statement at issue. Such determinations of evidentiary value are routinely addressed in the exercise of the trial court's discretion. See *People v. Brown*, 303 Ill. App. 3d 949, 961, 709 N.E.2d 609, 618 (1999) (trial court's finding regarding trustworthiness of hearsay statements offered under section 115—10.2 reviewed for abuse of discretion). In this case, the trial court's ruling on the State's motion was based on the court's determination that Thomas' and Marcus' prior testimony was not trustworthy, an exercise of discretion subject to deferential review.

■ Accordingly, we conclude that we lack jurisdiction to hear this appeal. In so concluding, we note that the State's posture here is no different than it would be in a case where the State files a motion *in limine* seeking the admission of a defendant's prior convictions and the trial court denies the motion after carefully balancing the probative value of the convictions against the risk of unfair prejudice in accordance with *People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971). Although that procedure is used routinely, we are not aware of any case in which a reviewing court has permitted an interlocutory appeal by the State of a trial court's decision barring the use

at trial of a defendant's prior conviction to impeach him. In fact, the State has not cited a single case in which the denial of the State's own motion *in limine* seeking to admit evidence has given rise to interlocutory appellate jurisdiction under Rule 604(a)(1).

Although we have compared the State's posture in this case to the common scenario involving the State's attempt to secure a pretrial ruling on the admissibility of a defendant's prior convictions, one meaningful distinction between the two situations does exist: in a case involving the admission of a defendant's prior convictions, at least the issue would have ripened at the time the trial court made its ruling. Here, section 115—10.2 of the Code allows for the admission of the hearsay statements only when "the declarant *persists* in refusing to testify *** despite an order of the court to do so." (Emphasis added.) 725 ILCS 5/115—10.2(c) (West 1998). That precondition can be satisfied only at trial.

Here, the State sought admission of the statements based only on the representations of Thomas' and Marcus' attorneys that their clients intended not to testify if called upon to do so at defendant's trial. Specifically, Thomas' attorney stated as follows:

"I think it would be fair to say, Judge, at this point that [Thomas] does not intend to testify ***.

However, he would want to be *** faced with that particular situation before he would make that decision, so there is definitely some uncertainty to his position at this time."

Marcus' attorney stated as follows:

"[A]t this point, my client does not know what he will be doing. He certainly has no desire to shield [defendant] from anything, but I think the [c]ourt is well aware my client is looking at a fairly substantial minimum sentence in the Department of Corrections. [Defendant] has been a regular at [the] Department of Corrections. My client fears for his safety.

I think two things—well, I think he is entitled to make that decision up until the time he needs to make that decision to take the time, but also I believe before he makes that decision, he does have the right to be admonished by the [c]ourt as to what he is facing if he [decides] in a way that would cause the State to ask that he be held in contempt."

The State's assumption that Thomas and Marcus would refuse to testify if ordered to do so was just that—an assumption. Both Thomas' and Marcus' attorneys expressed uncertainty regarding their clients' positions. Further, even if Thomas and Marcus had a present intent to disobey a court order to testify, experienced attorneys and trial judges know that a person's will to resist court orders often withers when sitting in the courtroom facing an insistent judge and imminent contempt

sanctions. Thomas' and Marcus' attorneys both apparently understood as much when they each urged the court not to assume their clients would commit contemptuous conduct until actually faced with the decision at trial.

### III. CONCLUSION

For the reasons stated, we dismiss the State's appeal.

Dismissed.

McCULLOUGH and GARMAN, JJ., concur.