# Illinois Official Reports

## Appellate Court

---

**People v. Caraballo, 2019 IL App (1st) 171993**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PEDRO CARABALLO, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-17-1993 |
| Filed | March 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. YW-621-780, YW-621-781, YW-621-782; the Hon. Donald Havis, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Mark Battaglia, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Devin T. Mapes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Griffin and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant Pedro Caraballo was convicted of one count of driving with a blood alcohol concentration of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2012)) and one count of driving under the influence of alcohol (DUI) (*id.* § 11-501(a)(2)). His sole contention on appeal is that the State did not lay a proper foundation for admission of the results of a breath test because the administrator of the test was not certified at the time the test was given. Specifically, defendant argues that the trial court erred when it did not exclude the result of a breath test administered to defendant because the officer who administered the test was not licensed at the time he administered it. For the following reasons, we agree with defendant that the results of the breath test administered to defendant should have been excluded because Officer James Compton was not licensed at the time the test was administered.

¶ 2                                              BACKGROUND

¶ 3        Before trial, defendant filed a motion *in limine* to exclude the result of a breath test administered by Officer Compton on November 10, 2013. At a hearing on the motion, defendant argued that one of the requirements for the administration of a breath test was that the administrator must be licensed by the State at the time of the test. Defendant argued that Officer Compton was not licensed on the date in question, and therefore the breath ticket could not be admitted as evidence against him. The State responded that although Officer Compton was not licensed on the day the test was administered, Officer Compton's license to administer the test had expired five days before the test, and he was recertified the day after he administered the test on defendant. The trial court granted defendant's motion to suppress the breath test.

¶ 4        The State filed a motion to reconsider, arguing that the certification to administer the breath test was "just a formality" because the real test was whether the officer knew what he was doing and whether the results were reliable. On August 14, 2015, the court ordered the defendant to respond and indicated that a hearing on the State's motion to reconsider was necessary. The court stated that the hearing would be on the limited issue of whether Officer Compton was certified at the time of the breath test, stating that if "he's not certified then the results don't come in." At some point between August 14, 2015, and February 10, 2016, the trial court granted the State's motion to reconsider. Defendant did not include the report of proceedings from August 14, 2015, to February 10, 2016, in the record on appeal.

¶ 5        On February 10, 2016, defendant moved the court to reconsider its order granting the State's motion to reconsider. Defendant argued that the trial court was correct in the first instance when it found that because Officer Compton was not certified when he administered the breath test, the breath test result was not admissible evidence. The case was then continued for a hearing to determine whether, despite his lack of certification, Officer Compton was knowledgeable and the test was reliable.

¶ 6        At the March 28, 2016, hearing, Officer Compton testified to his 11 year employment with the Hickory Hills police department and his specific training for the administration of breath tests through "a class put on through NEMRT at the Burbank Police Department" in 2006 or 2007. He also took a three-day certification class that required him to take practical and written exams relating to the operation of a breath test machine. After passing these exams, Officer Compton was certified to operate breath machines, specifically the Intoximeter EC/IR II used

by the Hickory Hills police department, and he was recertified in 2010. Compton testified that his certification expired on November 5, 2013. Officer Compton administered the breath test at issue to defendant on November 10, 2013, and recertified his license the following day, November 11, 2013. His certification was valid at the time of the hearing.

¶ 7    In terms of administering the test, in order to operate the machine, Officer Compton was required to enter a defendant's information such as his name, the date, the defendant's birth date, the defendant's driver's license number, as well as the officer's name and operator ID. After this information is entered, the instrument will "purge itself." Then Officer Compton placed a new mouthpiece on the machine. The mouthpiece came out of a sealed bag and was replaced every time he performed a test. If the machine was not working properly, an error message would appear on the screen.

¶ 8    Compton testified to the required procedures in the administration and operation of the breath test machine, that he followed these procedures when administering the test to defendant, and that these procedures were performed to the standards set by the Illinois State Police. Compton stated that when he recertified his license to administer breath tests on November 11, 2013, he did not learn of any new procedures that would have changed the process of the test he administered to defendant. Compton estimated that, during his 11 years with the Hickory Hills police department, he administered about 75 to 100 breath tests and that he has been certified to administer breath tests "either three or four times" in his career with the police department. He also stated that the breath test machines are checked for accuracy every "sixty-some days by the Illinois state police."

¶ 9    After hearing Officer Compton's testimony, the trial court allowed the breath test and result to be used at trial. The court found

> "[t]hat the operator beyond a doubt was knowledgeable as far as his knowledge as far as the machine, how it operates, things of that nature. And at this juncture right now, the only thing the State has to prove, according to the Court's opinion, is that the machine operated reliable [*sic*]. In this case, the machine gave out a result in this case. If it did not give out a result, it would give a refusal—not a refusal, a rejection at this point, according to the officer's testimony. So based upon this point, the Court is going to allow the Breathalyzer to be used at trial. And now we're at a different standard now. So your motion is granted."

¶ 10    On the day of trial, April 4, 2016, the State filed a motion *in limine*, asking the court to bar evidence that Officer Compton's breath test certification had expired at the time of the arrest. Defendant opposed the motion on the basis that it would prevent the defense from arguing a relevant fact. The court granted the State's motion, stating "the mere fact that the breathalyzer's operator's certifications lapsed for a period of time doesn't make it an issue of fact. It's an issue of law at this point."

¶ 11    At trial, Officer Compton testified that he was formally trained to detect and apprehend drivers impaired by alcohol. On November 10, 2013, he was stopped at a stop sign in his marked patrol vehicle when he observed a vehicle pass him and "the passenger's side tires strike a curb, go over the curb, travel through the grass, just miss a tree and then come back into the lane of traffic." As the vehicle came back into the lane of traffic, "the driver's side tires then crossed the solid yellow line before coming back into the road." Officer Compton then initiated a traffic stop based on his observations. He identified defendant in open court as the driver of

- 3 -

the vehicle. Officer Compton observed that defendant had "glassy, bloodshot eyes" and "highly slurred" speech. Defendant also had a strong odor of alcohol coming from his mouth.

¶ 12    Defendant told Officer Compton that he had a little to drink. Defendant attempted to hand Officer Compton a bottle of Jack Daniels but he missed Officer Compton's hand and the bottle fell to the ground. The video from Officer Compton's squad car was played in open court. It showed defendant complying with Officer Compton's request to exit the vehicle. As defendant exited, he tripped and almost fell into moving traffic. Officer Compton had to stop him from hitting the ground.

¶ 13    Officer Compton asked defendant to complete some field sobriety tests and read the instructions for these tests from a book of standardized instructions. During the one-legged test, defendant placed his foot down, fell off balance, and raised his hand up. These actions suggested impairment. For the walk-and-turn test, Officer Compton noted that defendant's balance was "horrible" and that he did not seem to understand the directions or Officer Compton's demonstration. Officer Compton observed four or five clues of impairment, when only two are needed. Based on defendant's performance of these tests, Officer Compton placed him into custody for DUI and transported him to lockup.

¶ 14    Officer Compton testified that at the police station, he read defendant his *Miranda* warnings. After the required 20-minute observation period, defendant agreed to submit to a breath test. After Officer Compton described the test procedures employed, the State offered defendant's breath test ticket into evidence. Defendant objected, arguing that Officer Compton was not certified as a breath test operator on the day he administered the test so the result should not be admitted. The State responded that actual certification was unnecessary where Officer Compton understood the procedures to operate a breath machine and that the requisite foundation to enter the breath ticket into evidence had been met. The circuit court overruled defendant's objection.

¶ 15    The authenticated breath test ticket showed a test result of 0.260, which was over the legal limit of 0.08. Officer Compton explained that the machine used to analyze defendant's breath was the Intoximeter EC/IR II. He stated that he administered tests on this machine about 100 times and did so according to industry standards. The machine is tested monthly for accuracy and it will not allow a test to be performed if it is not operating properly. Officer Compton testified to the training he received to operate the machine. The court did not allow Compton's most recent certification into evidence because Compton had already testified that he "is certified."

¶ 16    The State introduced two business record reports showing that the breath test machine Officer Compton used on defendant was certified on November 1, 2013, and again on December 1, 2013, and expert testimony that the breath test machine used to test defendant on the night of November 10, 2013, was accurate in its blood alcohol test result.

¶ 17    John Wetsetin, a toxicology coordinator for the Illinois state police, testified as an expert in the field of forensic toxicology. He opined that the primary function of the Intoximeter EC/IR II is to measure ethanol or alcohol or ethyl alcohol in the breath coming out of an individual. It does not measure acetone or ketones as a result of diabetes.

¶ 18    Defendant's motion for a directed verdict was denied. The jury found defendant guilty of driving with an alcohol concentration of 0.08 or more and guilty of driving under the influence of alcohol. Defendant was found not guilty of improper lane usage. Defendant was sentenced

to 12 months' conditional discharge. This appeal followed.

¶ 19                                ANALYSIS

¶ 20        In his brief filed in this court, defendant does not challenge the sufficiency of the State's evidence against him. His sole argument on appeal is that the State did not lay a proper foundation for admission of the results of the breath test because the administrator of the test was not licensed at the time the test was given and therefore the court's ruling on the State's motion *in limine* was erroneous. We agree and find the court's ruling on the State's motion *in limine* was in error.

¶ 21        Generally, the admission of evidence falls within the discretion of the trial court. *People v. Zwart*, 151 Ill. 2d 37, 44 (1992). A trial court's decision to grant a motion *in limine* will not be reversed on appeal absent an abuse of discretion. *People v. Larsen*, 323 Ill. App. 3d 1022, 1026 (2001). However, where the issue on appeal is whether the evidence was admitted on an erroneous legal basis, we review the question of admissibility *de novo*. See *id.* We also review *de novo* the construction of statutes (*People v. Elliott*, 2014 IL 115308, ¶ 11) and the Illinois Administrative Code (*People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 18). When construing a statute or Administrative Code provision, our "primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning." *Elliott*, 2014 IL 115308, ¶ 11. "In determining the plain meaning of the statute, we consider both the subject the statute addresses and the legislative purpose in enacting it." *Id.*

¶ 22        The admissibility of breath test results is governed by standards promulgated by the state police as dictated by statute. Section 11-501.2(a) of the Illinois Vehicle Code (Code) states in relevant part:

> "(a) Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11-501 or a similar local ordinance or proceedings pursuant to Section 2-118.1, evidence of the concentration of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:
>
>        1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of State Police by a licensed physician, registered nurse, trained phlebotomist, certified paramedic, or other individual possessing a valid permit issued by that Department for this purpose. The Director of State Police is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. The Department of State Police shall prescribe regulations as necessary to implement this Section." 625 ILCS 5/11-501.2 (West 2012).

¶ 23        Section 1286.100 of Title 20 of the Illinois Administrative Code states:

"The Director or his/her designee is authorized to license persons to be BAOs [(Breath Alcohol Operators)] subject to the requirements of this Section. BAOs are licensed to perform all appropriate BAO functions described in this Part. Only licensed BAOs may operate evidential breath testing instruments.

a) To be eligible to be a BAO, the individual must be employed by an agency or an accredited law enforcement training academy. BAO candidates, including those who have previously been licensed as a BAO in another state, must successfully attend the course and pass the written and proficiency examination or successfully complete a computer-based training (CBT) course.

b) Under the direction and control of a BAI [(Breath Alcohol Instructor)], BAO candidates must:

1) Complete a training curriculum approved by the Department that includes a minimum of 24 hours of instruction, which includes the following:

A) Presentation and discussion of the psychological, physiological, and pharmacological effects of alcohol in the human body;

B) Demonstration and discussion of instruments and the analytical processes used to measure BrAC [(Breath Alcohol Concentration)];

C) Practical application and demonstration in the use of an approved evidentiary instrument; and

D) Discussion of current DUI issues, the administrative rules, and case law.

2) Pass the following:

A) The standardized written examination for Breath Analysis Operator provided by the Department with a minimum score of 70 percent.

B) A proficiency examination where the candidate operates approved evidentiary instruments.

c) A license shall be valid for a period of three years after the printed date of issuance. If the license is not renewed as provided for in Section 1286.110, it shall expire three years after the printed date of issuance." 20 Ill. Adm. Code 1286.100, amended at 33 Ill. Reg. 8529 (eff. June 4, 2009).

When a motorist files a motion *in limine* to prevent the introduction of breath test results, the State must establish a sufficient foundation for admission into evidence. *People v. Ebert*, 401 Ill. App. 3d 958, 960 (2010). The requirements for laying the proper foundation of breath test results were outlined by our supreme court in *People v. Orth*, 124 Ill. 2d 326, 340 (1988). To lay a proper foundation, the State must establish that the test was performed in accordance with both section 11-501.2(a) of the Code (625 ILCS 5/11-501.2(a) (West 2012)) and the regulations promulgated by the Illinois Department of Public Health in consultation with the Department of State Police. *Orth*, 124 Ill. 2d at 339-40. The State must lay a foundation establishing five factors: (1) evidence that the test was performed in accordance with the uniform standard adopted by the Illinois Department of State Police; (2) evidence that the operator conducting the test was certified by the Department of State Police; (3) evidence that the breath test machine used was a model approved by the Department of State Police, was working properly, and was tested regularly for accuracy; (4) evidence that defendant was observed for 20 minutes prior to the test, and during that time, he did not smoke, drink or regurgitate; and (5) evidence that the results on the "printout" sheet are properly identified as

defendant's test results. *Id.* Failure to comply with section 11-501.2(a) and the regulations renders the results of the test unreliable and, thus, inadmissible. *People v. Emrich*, 113 Ill. 2d 343, 350-51 (1986).

¶ 25    It is undisputed that Officer Compton was not licensed to conduct the breath test on November 10, 2013. See 20 Ill. Adm. Code 1286.100, amended at 33 Ill. Reg. 8529 (eff. June 4, 2009). Because the administrator was not licensed at the time the test was administered, the breath test was not conducted in conformity with the regulations promulgated by the Department of State Police. *Id.* ("Only licensed BAOs may operate evidential breath testing instruments.").

¶ 26    The State argues that although Officer Compton was not licensed when he administered the breath test, his license had only lapsed for five days, and there is no showing that the testing process was in any other way improper. It relies on *People v. Keith*, 148 Ill. 2d 32 (1992), to support its argument. In *Keith*, the defendant moved *in limine* to suppress breath alcohol test results in his prosecution for reckless homicide. The test administrator's certification had expired at the time he administered the breath test and he had since died. It was stipulated that the deceased officer's supervisor reviewed the test results and that the deceased officer had his administrator's license renewed within two weeks after the subject test. *Id.* at 34-35. The trial court suppressed the breath test results because the administrator was deceased and because he was not certified at the time of administration of the test, and we affirmed. *Id.* at 37-38.

¶ 27    Before our supreme court, the State argued that the trial and appellate courts erred in barring the breath test results into evidence on the reckless homicide charge. *Id.* at 38. The State argued that in a prosecution for reckless homicide, "section 11-501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11-501.2), which incorporates the Department's standards relating to breathalyzer instruments, does not apply as in a DUI prosecution." Rather, the State argued that admissibility of breath-alcohol tests in a prosecution for reckless homicide was governed by the usual standards of evidentiary admissibility. *Id.* at 40.

¶ 28    The *Keith* court found that "[s]ection 11-501.2 standards apply only to actions or proceedings arising out of arrest for an offense as defined in section 11-501. Reckless homicide is not such an offense." *Id.* at 41. A prosecution for reckless homicide does not arise out of an offense defined in section 11-501, and therefore, "*Orth* and the Department's standards are not applicable here." *Id.* at 42. "We thus hold that the usual standards governing the admission of evidence apply to breath-alcohol test results in prosecutions for reckless homicide." *Id.* at 41. In addressing the defendant's contention that the *only* standard for admitting breath tests were the Department's standards, the *Keith* court explained that prior to the adoption of the Department's standards, breath-alcohol tests were admitted under the usual standards of admitting evidence. *Id.* at 41-42.

¶ 29    The *Keith* court discussed *People v. Krueger*, 99 Ill. App. 2d 431, 440-41 (1968), in which a breath test was admitted in evidence where the officer who performed the test testified that he had taken a training course, had a certificate as a certified breath test officer, explained the operation of the machine, stated the results of the defendant's test, and stated that the machine was in working order. On appeal, the trial court's decision to admit the breath test into evidence was affirmed, as the trial was satisfied that the machine was properly calibrated and maintained and that the officer had the proper knowledge to operate the machine and the officer properly performed and observed the test. *Id.* at 441.

¶ 30    The *Keith* court then affirmed the holding of the trial and appellate courts, finding that under the usual standards governing the admissibility of evidence, the results of the breath test were inadmissible because there was no evidence that the test was reliable. *Keith*, 148 Ill. 2d at 44-45.

¶ 31    The State urges this court to find that *Keith* stands for the proposition that where a proper foundation for a breath test cannot be laid under the requirements set forth in *Orth* and the Department's standards, then the breath test can be alternatively admissible under the usual standards governing the admissibility of evidence. We decline to do so. *Keith* is very clear that the *Orth* requirements and the Department's standards are the foundational standards applicable to the admission of breath test results in prosecutions for those offenses enumerated in section 11-501 (625 ILCS 5/11-501 (West 2012)).

¶ 32    As stated, defendant was charged with offenses listed in section 11-501. The *Keith* court only considered the admissibility of the breath test under ordinary admissibility standards because the *Orth* requirements and the Department standards did not apply in reckless homicide prosecutions. The *Keith* court's rejection of Keith's argument that the Department's standards were the only applicable standards for admitting breath tests, and its subsequent discussion of the admissibility of breath test results prior to the Department's adoption of its standards in 1970, does not in any way demonstrate the court's intention to allow an alternative means of admitting breath tests in the prosecution of offenses described in section 11-501. Rather, the *Keith* court's discussion of this subject explained that in the absence of a specific, identified admissibility standard for a breath test in a prosecution for an offense not identified in section 11-501, a general analysis of the procedures used, the knowledge of the person performing the test, and the reliability of the test were factors to be considered in determining the test's admissibility. *Id.* at 43-44; see also *People v. Hamilton*, 118 Ill. 2d 153 (1987); *Emrich*, 113 Ill. 2d 343.

¶ 33    We also find the State's reliance on *Ebert* and *People v. Bishop*, 354 Ill. App. 3d 549 (2004), to be misplaced. *Ebert* involved a defendant's challenge to the admissibility of a breath test where the administrator failed to comply with the regulations requiring him to continuously observe the defendant for at least 20 minutes before administering a breath test because the officer did not accompany the defendant to the bathroom during that time period. The *Ebert* court remarked:

> "The act of observing a motorist for 20 minutes obviously has no direct effect on the result of a breath test administered at the end of that period. The purpose of the observation requirement is to document that the motorist does nothing that might impair the accuracy of the breath test. Although [the officer] might not have been watching defendant while defendant was using the bathroom, defendant's own testimony establishes that he did nothing to impair the accuracy of the test—he did not vomit, belch, regurgitate, or place a foreign substance in his mouth. Thus, the breath test result was no less reliable than it would have been if [the officer] had observed defendant not doing those things. Given defendant's testimony, rigid enforcement of the observation requirement would serve no purpose and would frustrate the truth-seeking function by excluding reliable evidence." *Ebert*, 401 Ill. App. 3d at 965.

The *Ebert* court dismissed the defendant's argument, finding that any failure to strictly comply with the observation requirement was *de minimis*. *Id.*

¶ 34    In *Bishop*, 354 Ill. App. 3d at 551, the defendant was convicted of DUI following an automobile accident. On appeal, he argued that the State failed to collect a sample of his urine in compliance with section 1286.330(d) of Title 20 of the Administrative Code, which required that the " 'urine sample shall be collected from the subject's first emptying of the bladder in a clean, dry container.' " *Id.* at 555 (quoting 20 Ill. Adm. Code 1286.330(d), adopted at 25 Ill. Reg. 3023 (eff. Feb. 1, 2001)). According to the defendant, the hospital drew the first urine sample, and the second sample, drawn by police, was taken hours later. Therefore, the second urine sample did not strictly conform with section 1286.330(d). *Id.*

¶ 35    This court rejected the defendant's argument. We found that that substantial compliance with section 1286.330(d) of Title 20 of the Administrative Code was sufficient and that substantial compliance had been satisfied. *Id.* at 556. We noted that it was the hospital's procedure that prevented the State from taking a sample from the first emptying of the bladder. *Id.* We further noted that, "if we were to agree that any deviation whatsoever from the regulations rendered the results of a sample inadmissible, 'we would be ignoring the fact that strict compliance is not always realistically or humanly possible.' " *Id.* (quoting *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 34).

¶ 36    Both *Ebert* and *Bishop* involve challenges to tests that deviated slightly from the standards prescribed for administration of the test. These *de minimis* deviations did not affect the validity or reliability of the results. Substantial compliance was sufficient in those cases where a defendant was not continuously observed for the required 20-minute period because the defendant testified that he did nothing that, if he was observed, would have affected the test and where the State collected a second urine sample because the first sample was taken at the hospital following defendant's automobile accident. In *Ebert* and *Bishop*, there was no challenge to the admissibility of the tests on the basis that the officers administering these tests were not licensed by the State. That is not the case here.

¶ 37    Unlike *Ebert* and *Bishop*, in this case, we cannot find there was substantial compliance where the officer was not licensed at the time he administered the breath test. There simply was no compliance, as required by the statute and the Department's standards. Officer Compton's testimony regarding his training and the steps he took in performing the breath test was not sufficient to overcome the statutory requirement that Officer Compton be licensed to perform the test at the time the test was administered. Because Officer Compton was not a licensed breath analysis operator at the time he administered the defendant's test, the State failed to lay the required foundation for the admission of the breath test results in a section 11-501(a)(1) prosecution and it was reversible error to admit the results into evidence.

¶ 38    The plain language contained in the Department standards and the finding in *Orth* specifically requires that, to be admissible in evidence, the breath tests shall be "performed" by a licensed administrator according to the standards. The test was not performed according to the required standards in this case, and the failure to strictly comply was not *de minimis*. Accordingly, defendant's motion *in limine* should have been granted, and the breath test results should not have been admitted. Because the results of the breath test lacked a proper foundation and should not have been admitted as substantive evidence, we reverse defendant's conviction under section 11-501(a)(1). To prove defendant guilty beyond a reasonable doubt, the State must prove (1) defendant was in "actual physical control" of the vehicle and (2) the concentration of alcohol in his blood or breath was more than 0.08 based upon the definition set forth in section 11-501.2 of the Code. 625 ILCS 5/11-501(a)(1) (West 2012). Because the

State cannot prove a foundational element necessary for the admission of the breath test results—that the test was administered by a licensed operator—the State cannot prove defendant's blood or breath alcohol concentration while he was driving. The foundational defect we have found cannot be cured on retrial. We therefore reverse defendant's conviction for driving with an alcohol concentration of 0.08 or more (*id.*).

¶ 39 At oral argument, defendant requested that we remand for a new trial the DUI charge (*id.* § 11-501(a)(2)) because the admission of the breath test result infected and prejudiced defendant's trial on this charge. As we previously noted, defendant did not challenge his conviction for DUI in his notice of appeal, or make any argument in his appellate brief that the State failed to prove him guilty of DUI beyond a reasonable doubt. Defendant has therefore forfeited this argument. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 40 Forfeiture aside, we find that there was overwhelming evidence from which the jury could conclude beyond a reasonable doubt that defendant was under the influence of alcohol while in physical control of the vehicle, even without the admission of the breath test evidence. *Supra* ¶¶ 11-13. We find no possibility that admission of the breath test results prejudicially influenced the jury's determination on this charge. Defendant's conviction for DUI (625 ILCS 5/11-501(a)(2) (West 2012)) is therefore affirmed.

¶ 41 CONCLUSION

¶ 42 For the foregoing reasons, we affirm in part and reverse in part.

¶ 43 Affirmed in part and reversed in part.